### PENN BUILDERS & SUPPLY CO. v. BRAEBURN STEEL CO.

(Circuit Court of Appeals, Third Circuit. August 13, 1921.)

No. 2659.

1. **Shipping ☞58(2)—Finding that sinking was due to unseaworthiness held sustained.**

   Finding that sinking of a boat while being loaded with coal at charterer's tipple was due to its unseaworthiness, and not to negligence of charterer in loading, *held* sustained by the evidence.

2. **Shipping ☞42—Warranty of fitness of boat for known use by charterer implied.**

   There is an implied warranty by the owner of a boat of its general fitness for the known use for which it was chartered.

3. **Shipping ☞54—Charterer not liable for sinking of boat due to unfitness for known use.**

   There is no liability of the charterer of a boat for its sinking due to no negligence of the charterer, but to lack of its general fitness for the known use for which it was chartered, of which there was an implied warranty by the owner.

Appeal from the District Court of the United States for the Western District of Pennsylvania; W. H. S. Thomson, Judge.

Libel in admiralty by the Penn Builders & Supply Company against the Braeburn Steel Company. From a decree for respondent, libelant appeals. Affirmed.

Lowrie C. Barton, of Pittsburgh, Pa., for appellant.

W. L. G. Gibson, John G. Frazer, and Reed, Smith, Shaw & Beal, all of Pittsburgh, Pa., for appellee.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

DAVIS, Circuit Judge. On December 2, 1919, libelant entered into a charter party with respondent, whereby it demised for an indefinite term one derrick boat and two flats. The flats were to be loaded with coal at respondent's chute on the west side of the Allegheny river and towed to its plant on the east side by the libelant. The re-

spondent was to pay $50 per day for the derrick boat, $10 each per day for the flats, and $7 for towing the flats across the river. The loading of the flats on the west side of the river was to be done by the respondents, and the towing and unloading by libelant. The libelant, according to a verbal agreement, was to furnish an engineer and fireman to operate the derrick boat. After being unloaded at the plant, the flats were towed back by libelant to the tipple or chute. On December 6, 1919, one of the flats, after four loads had been taken across the river in it, and it had been returned to the tipple for another load, sank while being loaded.

The libelant alleged in its libel:

That the "vessels when delivered to respondent were in good order and condition and seaworthy in every particular," and that the respondent "so negligently, carelessly, and improperly loaded the said flat, by placing coal it was loading in the center of the flat, instead of distributing it over the flat, as is the proper and correct manner of loading, the flat collapsed in the center, thereby causing the ends to raise up, and wrecking and damaging the same, causing the same to fill with water and sink."

The respondent denied these allegations and averred:

That the "flat sank by reason of leaks therein, which existed prior to the time the said flat was brought to respondent's plant, and by reason of the failure of the employees of the libellant to take proper care of said flat or pump the water out of same, in order to prevent said flat from sinking when its condition was called to their attention."

[1] The issue, therefore, between the parties was: To what was the sinking of the flat due—negligence in loading, or unseaworthiness of the flat when chartered? The learned trial judge found that the sinking was due to unseaworthiness and the neglect "of libelant, whose duty, under the circumstances, was to put and keep it in condition fit for its intended use." The libelant admits that if the "flat sank by reason of unseaworthiness at time of delivery to respondent it cannot recover." If, however, the flat sank because of the negligence of the respondent in loading, the libelant may recover, and the judgment of the District Court should be reversed.

The testimony here and there was conflicting, but it supports the following conclusions of fact: The flat was old and leaked. The first load of coal was distributed evenly over the bottom of the boat, but at the suggestion of libelant the coal was run down through a chute and left in cone-shaped piles, so that it could be more easily unloaded. The first pile was placed somewhere between 5 and 8 feet from the lower end of the flat, which, when that pile was completed, dropped down with the current, and another pile was put on, and so on until the flat was loaded. The day before the flat sank, Mr. Newman, who was in charge of the loading for respondent, noticed ice and water in it, and called this to the attention of Mr. Warner, in charge of the derrick boat for the libelant, who said he would bring up the large siphon the next time and bail it out. The flat was taken over next day, apparently in the same condition, for loading. About 2 o'clock in the afternoon, when the third pile was on, Mr. Newman saw water around the piles. He called the libelant and told it to come over and get the flat. At half past 4 he went back and found 18 or 20 inches of water

796 . 274 FEDERAL REPORTER

in it. The captain of the towing boat was there, and said that he could not take the flat across the river, and that it should be siphoned out. The derrick boat came over about 5 o'clock and began to siphon the water out, when Mr. Newman went home, leaving the two men still pumping. After working for about an hour and a half with the small siphon, during which time they kept practically even with the water, they went home, leaving the flat slightly grounded on the shore side. In the morning the flat was sunk. With the use of the derrick boat, the libelant unloaded what coal it could from the flat, and then, at the direction of Newman, to move it away so that he could get another flat under the chute to load, took it about a mile down the river, where it stuck on a bar and was allowed to remain there unfastened until the river rose and carried it some 7 miles down to Logan's Ferry, where Mr. Warner, for libelant, caught and tied it. There it "remained in a sunken condition until swept away and destroyed by ice when the frozen river broke up the following spring."

The first pile of coal put into the flat on the fourth trip, when it sank, was 8 feet from the end, appellant says; but it was only 5 feet according to appellee. Whatever the fact may be, it is undisputed that coal was shoveled from that pile toward the end of the flat, to the place where libelant contends the first pile should have been placed. The placing of this pile is the essence of the negligence charged. It is also undisputed that the flat had about 4 inches of water and ice in it when the first pile of coal was put in, and by the time the third or fourth pile was in it was leaking fast. The appellee suggested that this was due to the thawing of the ice by the coal, which, coming from the mines, was warmer than ice. But, be that as it may, we are satisfied that if this flat, 100 feet long and never loaded to more than half its capacity since chartered to the respondent, had been seaworthy and reasonably fit for the use for which it was chartered, there was nothing in the manner of loading to cause it to leak so fast and sink. Without attempting a further detailed review of the testimony, a careful study of it satisfies us that it amply sustains the ultimate conclusion of fact, found by the learned trial judge, that the flat was unseaworthy.

[2, 3] The charter party does not contain an express warranty of seaworthiness of the flat, but in the absence of express warranty, general fitness for the use, if known, for which it was chartered, was implied on the part of the owner, and it incurred the risk of loss or injury, not due to negligence of the charterer, to the boat incident to that use. Walling v. Porter Gildersleeve Co. (D. C.) 222 Fed. 1002; Arundel Sand & Gravel Co. v. Naylor & Co., 242 Fed. 494, 155 C. C. A. 270. The libelant towed the flats from side to side of the river, and knew the use for which they were chartered. It therefore incurred the risk, and must bear the loss of the flat in question.

The decree of the District Court is affirmed.